# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PIA D. LYONS,**

                **Plaintiff,**

**v.**                                               **Case No. 6:16-cv-1191-Orl-40KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff, Pia D. Lyons, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 12, 14, and the parties' Joint Memorandum, Doc. No. 20.[1]

## PROCEDURAL HISTORY.

In 2012, Lyons filed applications for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.*, and under the Supplemental

---

[1] In the Scheduling Order, I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 15. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Revised Scheduling Order. *Id.* at 4.

Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq.* (sometimes referred to herein as the "Act"). She alleged in the OASDI application that she became disabled on February 15, 2009, and in the SSI application that she became disabled on February 15, 2010. R. 175, 177.

After her applications were denied originally and on reconsideration, Lyons asked for a hearing before an Administrative Law Judge ("ALJ"). R. 122. An ALJ held a hearing on December 2, 2014. Lyons, accompanied by an attorney, and a vocational expert ("VE") testified at the hearing. R. 37-58

After considering the hearing testimony and the evidence in the record, the ALJ issued a decision. R. 13-25. The ALJ considered Lyons' disability onset date to be February 15, 2010. R. 13.[2] The ALJ found that Lyons was insured under OASDI through September 30, 2015. The ALJ concluded that Lyons had not engaged in substantial gainful activity since February 15, 2010. R. 15.

The ALJ found that Lyons had arthropathy and a left shoulder disorder, which were severe impairments. *Id.* The ALJ concluded that Lyons' vision problems were not severe. R. 16. The ALJ found that Lyons did not have an impairment or combination of impairments that met or equaled an impairment listed in SSA regulations. *Id.*

The ALJ determined that Lyons had the residual functional capacity ("RFC") to perform light work, "except, she can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs. She can never climb ladders, ropes or scaffolds. She can frequently reach, handle and perform fine manipulative tasks with her left upper extremity." *Id.* In reaching this conclusion,

---

[2] Counsel for Lyons does not contend that this disability onset date was erroneous.

the ALJ gave great weight to the functional capacity assessment of Ronald Kline, M.D., a reviewing physician. R. 22. The ALJ gave great weight to the opinion of George White, M.D., a treating physician, through the time he treated Lyons, but little weight to his opinions at the time the decision was issued. *Id.* The ALJ did not state the weight given to other examining and treating physicians. The ALJ concluded that Lyons' statements about her functional limitations were only partially credible. *Id.*

After considering the testimony of the VE, the ALJ determined that Lyons could perform her past relevant work as production assembler and hospital cleaner. R. 23. Therefore, the ALJ concluded that Lyons was not disabled. *Id.*

Lyons requested review of the ALJ's decision by the Appeals Council. R. 5. On May 12, 2016, the Appeals Council found no reason to review the ALJ's decision. R. 1-3.

Lyons now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Lyons having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are generally adequately stated in the Joint Memorandum and the ALJ's decision, which statement of facts I incorporate by reference.

Accordingly, I will only summarize facts pertinent to the issues raised to protect Lyons's privacy to the extent possible.

Lyons was born in 1960. R. 41. She completed high school in Peru. R. 42. She could understand only a little English. R. 39, 45. She was assisted at the hearing by an interpreter. R. 39. She was right-handed. R. 293.

Lyons testified that she had pain in her left shoulder and elbow and that her left hand was numb. R. 47. She had difficulty holding things in her left hand. R. 47-48. She could reach upwards with her left arm, but it hurt to do so. R. 48. She could not lift with her left side. R. 50. Lyons also testified that she did not see well due to blurry vision. Glasses did not help her. *Id.*

*Left Upper Extremity Impairment.*

The medical records reflect that Dr. White began treating Lyons in July 2009 after an injury at work suffered in November 2008. Lyons complained of left shoulder pain, tenderness, loss of motion and strength, stiffness and swelling. Dr. White noted that an MRI showed AC joint arthritis, subacromial spur formation, impingement, and partial rotator cuff tears. R. 293. Dr. White performed arthroscopic surgery on Lyons' left shoulder on September 9, 2009. R. 291. On February 1, 2010, Dr. White determined that Lyons had reached maximum medical improvement ("MMI"). R. 272. He limited her on the left to no lifting over 20 pounds, no overshoulder lifting, no repetitive lifting, pushing, pulling, grasping or pinching. He opined that these limitations were permanent. R. 271. On May 7, 2010, a treatment note from Dr. White's practice reflected the same limitations. R. 263-64. Sometime before November 3, 2010, Dr. White reviewed additional medical records and arthrogram studies. He opined that the permanent restrictions he previously imposed still applied. R. 261-62.

On February 5, 2013, William Leach, M.D., examined Lyons at the request of the State disability office.[3] He reviewed records from Dr. White's practice. R. 306-07. Lyons complained that she had left shoulder and arm pain among other problems. R. 307. Upon examination, Dr. Leach observed that Lyons' left shoulder appeared higher than the right shoulder, with the left shoulder held in an upward spasm. Range of motion was limited in the left shoulder, elbow and wrist, and Dr. Leach observed pain and tenderness in the left elbow and wrist. He also observed pain, tenderness and numbness with minimal swelling of the left hand. R. 308. Lyons could not make a fist with her left hand, and she had 0 pounds per square inch of grip strength in her left hand. There was diminished muscle in the left hand. R. 309. Lyons could not lift 20 pounds with her left upper extremity. She could not turn door handles or button clothing with her left hand. R. 310.

In March 2013, Lyons sought treatment at Central Florida Family Health Center for complaints of left shoulder pain and burning at a level of 9 on a 10-point pain scale with radiating numbness and weakness. R. 322-23. Upon examination, Deborah Sibley, ARNP, observed decreased range of motion in the left arm with tenderness to palpation in the entire rotator cuff. R. 325. She referred Lyons to an orthopedic surgeon and prescribed medication. R. 326.

On May 21, 2013, Dr. Kline prepared a functional capacity assessment after review of Lyons' records. Regarding limitations in the left upper extremity, Dr. Kline opined that Lyons had a limited ability to reach in front, laterally and overhead, limited ability to push and pull and limited ability in fine and gross manipulation. R. 83-84. In his summary of the supporting medical

---

[3] The ALJ mistakenly indicated that this examination was performed by Ramiro Lanzas Fuentes, M.D. R. 19.

records, Dr. Kline indicated that reaching, handling and fingering on the left was limited to occasional use (1/3). R. 85.

In June 2014, Stephen Reed, M.D., an orthopedist, and Vesna Sweet, PA-C, examined Lyons. Upon examination, Dr. Reed observed that Lyons' shoulders were level. He noted left rotator cuff atrophy and subacromial tenderness on palpation. Lyons had painful range of motion on the left. R. 330. Dr. Reed's impression was left shoulder impingement syndrome and left rotator cuff syndrome NOS. Dr. Reed recommended another shoulder MRI. R. 331.

*Vision Impairment*.

During his examination of Lyons on February 5, 2013, Dr. Leach evaluated her vision. Her visual acuity in both eyes was 20/100 without corrective lenses. R. 307.

On June 17, 2014, Donald J. Centner, M.D., at Magruder Eye Institute examined Lyons. Lyons complained of blurry vision and sharp pain. R. 338. Lyons' uncorrected vision in the right eye was 20/150 and in the left eye was 20/400. Her pinhole acuity in the right eye was 20/60 and in the left eye was 20/100.[4] R. 339. Dr. Centner observed macula myopic degeneration in both eyes with scarring and atrophy in the left eye. R. 340.

On June 23, 2014, Lyons reported fuzzy vision, flashes and floaters. R. 335. Tanu O. Thomas, M.D., also at the Magruder Eye Institute, found that Lyons' uncorrected vision was 20/400 in the right eye and 20/200 in the left eye. Pinhole vision was 20/70 in the right eye and 20/100 in the left eye. He also found macula myopic degeneration. R. 336. He treated the right eye with

---

[4] "A pinhole occluder is a device used to distinguish between vision deficiencies resulting from refractive errors which can be corrected with lenses and other[ ] deficiencies caused by eye disease which cannot. A pinhole occluder determines the best visual acuity attainable through the use of corrective lenses." *Lacy v. Astrue*, No. 4:12-cv-16(CEJ), 2012 WL 6738495, at * 3 n.3 (E.D. Mo. Dec. 31, 2012)(citations omitted).

6

medication. He noted that additional procedures might be required. R. 337. On July 7, 2014, Dr. Thomas again evaluated Lyons. At that time, her uncorrected vision in the right eye was 20/80 and 20/400 in the left eye. Her pinhole vision was 20/70 in the right eye and 20/100 in the left eye. It appeared that medication improved the vision in Lyons' right eye. R. 333.

*VE Testimony*.

During the hearing, the ALJ asked the VE to assume a hypothetical person of Lyons' education and work experience with the RFC determined by the ALJ. R. 55. The VE testified that this person could perform Lyons' past work as a production assembler as actually performed and as performed generally. The person could also perform Lyons' past work as a hospital cleaner as that job was actually performed. R. 55-56. The ALJ then changed the hypothetical question to limit the person to occasionally reaching, handling, and fine manipulation with the left upper extremity. With this modification, the VE testified that the person could not perform any of Lyons' past relevant work. R. 56. The VE testified that the person could perform the light, unskilled job of housekeeping, cleaner, which existed in the national economy. *Id*.

**ANALYSIS.**

Lyons raises three assignments of error. She contends that the ALJ erred in his RFC assessment by failing to include limitations on use of her left arm and hand as indicated by Dr. White and supported by Dr. Leach (Issue 2). She argues that the ALJ also erred by finding that her vision impairment was not severe (Issue 1). Intertwined with these arguments, Lyons asserts that the ALJ erred in the weight he gave to certain opinions and erred by failing to state the weight given to other opinions. She contends that these errors caused the hypothetical questions to the

7

VE to be incomplete (Issue 3). She asks that the final decision of the Commissioner be reversed and that the case be remanded for further proceedings.

*Left Upper Extremity Impairment.*

Dr. White was a treating physician. Therefore, his opinions were entitled to considerable weight absent a showing of good cause to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The ALJ gave great weight to Dr. White's functional capacity assessment regarding Lyons' limitations following her shoulder surgery, which were as follows: no lifting over 20 pounds, no overshoulder lifting, no repetitive lifting, pushing, pulling, grasping or pinching with the left upper extremity. The ALJ did not credit Dr. White's opinion that these limitations were permanent, however, stating that "medical records show improvement since [Dr. White's] last evaluation." R. 22. It appears that the ALJ relied on the functional capacity assessment of Dr. Kline and treatment records of ARNP Sibley to support this conclusion. *Id.*

Substantial evidence in the record does not support the ALJ's conclusion that Lyons' left upper extremity impairment significantly improved after Dr. White stopped treating her. In February 2013, Dr. Leach confirmed on examination that Lyons' left shoulder was held higher than the right shoulder in an upward spasm. Range of motion was limited in the left shoulder, elbow and wrist, and Dr. Leach observed pain and tenderness in the left elbow and wrist. He also observed pain, tenderness and numbness with minimal swelling of the left hand. Lyons could not make a fist with her left hand, and she had 0 pounds per square inch of grip strength in her left hand. There was diminished muscle in the left hand. In March 2013, ARNP Sibley observed decreased range of motion in the left arm with tenderness to palpation in the entire rotator cuff. In 2014, Dr. Reed observed that Lyons' shoulders were level, but he also noted left rotator cuff atrophy and

8

subacromial tenderness on palpation with painful range of motion. Dr. Reed's impression was left shoulder impingement syndrome and left rotator cuff syndrome NOS. None of this evidence shows improvement that undermined Dr. White's permanent functional capacity assessment.

Dr. Kline's functional capacity assessment also does not support the ALJ's determination that Lyons could frequently reach, handle and perform fine manipulative tasks with her left upper extremity. Rather, Dr. Kline opined that Lyons could only perform these tasks occasionally. The VE testified that if the hypothetical person could only perform these tasks occasionally, the person could not return to Lyons' past relevant work.

Finally, Lyons correctly argues that the ALJ did not state the weight he gave to the opinions of Dr. Leach, Dr. Centner and Dr. Thomas. These failures are reversible error. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

For these reasons, I recommend that the Court reverse the final decision of the Commissioner.

*Vision Impairment*.

Lyons contends that the ALJ erred at step two of the sequential evaluation by finding that her vision impairment was not severe. Counsel for the Commissioner correctly argues that there is no step two error when, as here, the Commissioner finds at least one severe impairment and continues through the remaining steps of the sequential evaluation. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

Because I recommend that the Court reverse the final decision of the Commissioner, I recommend that, on remand, the Commissioner be required to further explain why Lyons' vision impairment was determined not to cause functional limitations. As counsel for Lyons argues, the

9

visual acuity findings are insufficient, standing alone, for the parties and the Court to understand what functional limitations Lyons would have based on those findings.

*Hypothetical Questions to the VE.*

If the Commissioner determines on remand that Lyons cannot perform any of her past relevant work, the ALJ should pose a hypothetical question to a VE that includes all of Lyons' impairments. *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)(per curiam).

**RECOMMENDATION.**

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **REVERSED** pursuant to sentence four of § 405(g) and that the case be **REMANDED** for further proceedings. I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

**Notice to the Parties.**

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.

Respectfully Recommended this 31st day of May 2017.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE